967 P.2d 123

The STATE of Arizona, Appellee,

v.

Stephen Castañeda LUJAN, Appellant.

No. CR–97–0375–PR.

Supreme Court of Arizona,
En Banc.

Oct. 22, 1998.

Grant Woods, Arizona Attorney General by Paul J. McMurdie, Phoenix, Eric J. Olsson, Tucson, for State of Arizona.

Susan A. Kettlewell, Pima County Public Defender by Susan M. Quillin, Tucson, for Stephen Castañeda Lujan.

## OPINION

FELDMAN, Justice.

¶ 1 Stephen Castañeda Lujan was convicted of one count of child molestation, a class 2 felony under A.R.S. § 13–1410, and

sentenced to twelve years' imprisonment. We granted Lujan's petition to review the court of appeals' decision affirming his conviction and sentence. *State v. Lujan,* No. 2 CA–CR 95–0285 (Ariz.Ct.App. July 29, 1997). We have jurisdiction under Ariz. Const. art VI, § 5(3).

## FACTS AND PROCEDURAL BACKGROUND

¶ 2 In the early afternoon of June 20, 1993, nine-year-old Chelsie was swimming in the pool of the apartment complex where she lived. She claimed that while in the pool, Lujan came up behind her, put his hand inside her bathing suit, rubbed her "front private part," and asked if she liked it. Lujan, on the other hand, claimed at the first trial that he had been swimming in the pool when Chelsie jumped in on top of him. He admitted to then grabbing her by the ankles to pull her off and dunking her under the water two or three times but maintained he never touched her in the genital area.

¶ 3 Lujan's first trial ended in a mistrial due to jury deadlock. On the morning of June 1, 1994, when the second trial was to begin, the prosecutor advised the judge that beginning in March 1993 and continuing through May 1994, Chelsie had been molested by at least two other men. The acts included oral, anal, and vaginal sex.[1] The judge granted the prosecutor's request to continue the trial because Chelsie was too upset to testify. Lujan then sought to offer evidence of these molestations at his second trial, arguing it was admissible despite the rape shield created by *State ex rel. Pope v. Superior Court, In and For Mohave County,* 113 Ariz. 22, 29, 545 P.2d 946, 953 (1976) (evidence of rape victim's unchastity inadmissible if offered to impeach victim's credibility, or to prove consent).

¶ 4 At the hearing on the motion, Lujan's expert testified about general behavioral characteristics exhibited by child victims of sexual abuse. He said he was aware that Chelsie had been seriously molested by at least one other adult male both before and after the incident with Lujan, and that such a child might develop "hypersensitivity" and thus misperceive the nature of any physical touch by another adult male. Reporter's Transcript (R.T.), Aug. 1, 1994, at 8–12. He further testified that such a child could have a negative reaction to a quite innocent, non-sexual touch. *Id.* at 18. In opposing the motion, the prosecutor argued that because Chelsie would not "be describing acts that are so unusual that [she] would not know of them but for" Lujan's conduct, the prior abuse was inadmissible. State's Memorandum Re: Admission of Prior Molestation, filed July 29, 1994, at 5.

¶ 5 The judge ruled that the expert testimony as well as any other evidence of the prior molestations would be inadmissible at trial, stating:

> I agree with [defense] counsel that the right to confrontation is an extraordinarily important issue. It hasn't been greatly explored and I think that's going to take place in the 90's. And the Fourth Amendment was explored in the 60's and 70's, and we'll have more Sixth Amendment cases.
>
> In this case at hand, I've listened carefully and spent probably more time researching this, because the law is difficult in this area, and it really depends on a factual evaluation, I think, of each case. I think the courts tell me, as a judge, that I have to take a look at the case.
>
> In this case I have looked at it and find that the evidence you seek to introduce is more prejudicial than probative, and it's ordered denying the request that you be able to put before the jury this child's prior molest, and that also means that you can't introduce expert testimony.

R.T., Aug. 1, 1994, at 24–25.

¶ 6 Lujan failed to attend his second trial and was tried *in absentia.* The jury found him guilty as charged. On appeal, Lujan raised two issues: whether the trial judge erred in trying him *in absentia* and whether the trial judge erred in precluding evidence that Chelsie had been repeatedly molested

---

1. Because it is unclear from the record which incidents occurred prior to the pool incident and whether they involved one or two men, we leave it to the trial court to determine which evidence is relevant to Lujan's theory.

by at least one other man shortly before the incident with Lujan. Although we granted review on both issues, we find the preclusion issue dispositive and therefore do not address the question of whether it was error to try Lujan *in absentia.*

## DISCUSSION

█ ¶ 7 Lujan was convicted of violating A.R.S. § 13–1410, which at the time he was charged read:

> A person who knowingly molests a child under the age of fifteen years by directly or indirectly touching private parts of such child . . . is guilty of a class 2 felony and is punishable pursuant to § 13–604.01.

"Knowingly molests" not only requires that the defendant touch a child's private parts but that the defendant be motivated by a sexual interest. A.R.S. § 13–1407(E); *In re Maricopa County Juvenile Action No. JV–121430,* 172 Ariz. 604, 606–07, 838 P.2d 1365, 1367–68 (App.1992). Because Lujan was not present to offer his own version of events, the only direct evidence offered to prove Lujan's conduct and the requisite intent was Chelsie's testimony. There were no other witnesses to the alleged touching, and Lujan's exculpatory statement to the police, although admitted at his first trial, was not admitted at the second trial. R.T., Aug. 2, 1994, at 19.

¶ 8 Lujan's defense was that although he had physical contact with Chelsie when dunking her, he never touched her private parts. To support this theory, Lujan wanted to offer evidence that Chelsie, as a victim of severe, nearly contemporaneous sexual abuse,[2] was hypersensitive to interaction with adult males and thus misperceived her physical contact with Lujan. At the hearing on the motion in limine, Lujan offered: (1) evidence of another's conviction for sexual abuse of Chelsie, and (2) expert testimony to substantiate his theory of Chelsie's possible misperception.

## A. Expert testimony in sexual abuse cases

¶ 9 We first considered the admissibility of expert testimony in sexual abuse cases in *State v. Lindsey,* in which we held that expert testimony may be admitted on the general behavioral characteristics potentially affecting "credibility or accuracy" of childhood sexual abuse victims. 149 Ariz. 472, 475, 720 P.2d 73, 76 (1986). "*Lindsey* recognized that expert testimony on . . . problems afflicting sexual abuse victims may . . . aid jurors in evaluating" victims' testimony. *State v. Moran,* 151 Ariz. 378, 381, 728 P.2d 248, 251 (1986). *Moran* allowed the prosecution to present expert testimony on behavioral characteristics of a recanting child victim to assist the jury in evaluating the victim's motive for recanting. *Id.* at 383–84, 728 P.2d at 253–54. Noting that several other jurisdictions used expert testimony to explain the general behavioral characteristics of child victims, *Moran* read *Lindsey* to allow expert testimony regarding "emotional antecedents underlying the victim's behavior" as long as the expert did not comment on the victim's credibility. *Id.* at 382, 728 P.2d at 252 (citations omitted).

¶ 10 In *Moran,* a child who was removed from her home after accusing her father of abuse, learned that her father might be imprisoned, then recanted her story and asked to be returned home. *Id.* at 382, 728 P.2d at 252. The defense argued that the child could not have been a victim of incest if she subsequently stated a desire to go home. In response, the prosecution properly offered expert testimony that children who have suffered abuse often recant after they learn of the penalty facing their parent. *Id.* at 379, 728 P.2d at 249. The expert testified that recanting an earlier abuse charge was not inconsistent with the occurrence of abuse and explained a child's possible subconscious motivation for recanting. *Id.* at 383, 728 P.2d at 253.

█ ¶ 11 In the present case, the defense wished to offer expert testimony explaining

---

**2.** "Sexual abuse" is now defined in A.R.S. § 13–1404 as "intentionally or knowingly engaging in sexual contact with any person fifteen or more years of age without consent of that person or with any person who is under fifteen years of age if the sexual contact involves only the female breast." References in this opinion to sexual abuse, taken from prior case law, do not refer exclusively to the conduct defined in § 13–1404 but a more general use of that term.

how and why Chelsie could have misinterpreted Lujan's innocent touch during the pool encounter. Chelsie's possible subconscious proclivity to misinterpret physical contact with an adult male is directly analogous to the victim's possible subconscious motivation to recant in *Moran.* Chelsie's prior abuse was an emotional antecedent that might have induced a misperception of her interaction with Lujan. *See id.* at 382, 728 P.2d at 252. Just as the prosecution in *Moran* could use expert testimony about the behavioral characteristics of sexually abused children to explain the inconsistencies in a child's statements, when appropriate under the facts of a particular case, the defense may use such testimony to show a child's possible misperceptions.

¶ 12 Thus, testimony providing the jury with an alternate explanation of the basis for Chelsie's allegations was admissible to assist the jury in evaluating her testimony. *See id.* at 384, 728 P.2d at 254. Opinion testimony describing behavioral characteristics outside jurors' common experience is permitted as long as it meets other admissibility requirements. *Id.* When the facts of the case raise questions of credibility or accuracy that might not be explained by experiences common to jurors—like the reactions of child victims of sexual abuse—expert testimony on the general behavioral characteristics of such victims should be admitted. The jurors may then use their "good common sense [to] . . . discern that which is true from that which is false." *Id.*

¶ 13 Moreover, in this case there was little danger of unfair prejudice to the state in admitting evidence of the prior sexual abuse perpetrated on its witness. The jurors were not likely to be prejudiced against nine-year-old Chelsie by hearing that she had been terribly abused by another. Suppressing the evidence, however, caused extreme prejudice to Lujan because absent the expert testimony and the underlying evidence of prior abuse, he was unable to present his defense. Thus the judge's ruling that the evidence was more prejudicial than probative is unsupported. *See State v. Chapple,* 135 Ariz. 281, 297 n. 18, 660 P.2d 1208, 1224 n. 18 (1983). Reversal is required unless the proffered evidence was inadmissible under Arizona's rape shield cases.

## B. Arizona's rape shield doctrine

### 1. *State v. Pope*

¶ 14 Although most states have enacted victim "rape shields" by statute, Arizona has instead developed its rape shield solely through case law. *Pope* affirmatively established a rape shield that prohibits admission of a victim's sexual history as evidence of bad character or consent except in highly particularized situations. 113 Ariz. at 28–29, 545 P.2d at 952–53 (overruling *State v. Wood,* 59 Ariz. 48, 122 P.2d 416 (1942)). But *Pope* allows a victim's prior sexual conduct to be admitted under some circumstances, such as when the alleged victim's previous acts with the accused may show consent, when the prosecution has opened the door by asserting the victim's chaste nature, or when "the subjective intent of the assailant is an element of the crime." *Id.* at 29, 545 P.2d at 953. The court stated that:

> We recognize there are certain limited situations where evidence of prior unchaste acts has sufficient probative value to outweigh its inflammatory effect and require admission. . . . If the . . . proffered evidence falls into one of the above exceptions, the trial court should allow its admission if it is not too remote and appears credible.

*Id.* Thus, the rape shield established by *Pope* does not act as an automatic bar to the admission of a victim's sexual history in every case.

### 2. *State v. Oliver*

¶ 15 In *State v. Oliver,* the defendant sought to admit evidence that the child had been a victim of prior sexual abuse and thus was knowledgeable enough to fabricate the allegations. To determine whether the prior abuse was admissible, the court noted that the rape shield was adopted in *Pope* because "requiring sex crime victims to defend every incident in their pasts will discourage prosecution" and "introduction of sexual histories might confuse the jury." *Oliver,* 158 Ariz. 22, 27, 760 P.2d 1071, 1076 (1988). The

*Oliver* court found these reasons equally applicable to child molestation situations and thus adopted the *Pope* rule for such cases. *Id.* Noting the peculiarities of child molestation cases, the court added an extra exception to the *Pope* rule, allowing admission of a young child's sexual history to show an alternate basis for that child's explicit sexual knowledge. *Id.* at 27–29, 760 P.2d at 1076–78. Following other courts that had adopted this exception, *Oliver* required a showing that the victim had been previously exposed to a sexual act sufficiently similar to the act presently charged to give the victim the ability to imagine or contrive the later accusation. *Id.* at 28, 760 P.2d at 1077. The court did not adopt a rigid test and therefore did not "imply that these factors must be applied mechanically, or ... *that they are the only factors that a court might consider.*" *Id.* at 28 n. 3, 760 P.2d at 1077 n. 3 (emphasis added).

¶ 16 Thus, under *Oliver* a defendant can offer incidents of the child's prior abuse to show motive, propensity, or ability to imagine or fabricate when the evidence is "introduced for purposes other than to impugn or cast doubt on a victim's moral character." *Id.* at 27, 760 P.2d at 1076. The evidence in the present case was not offered to impugn or cast doubt on Chelsie's moral character; it was intended solely to help explain the subconscious mental processes that might have affected her perception, the account she gave to the police, or her subsequent testimony.

### 3. State v. Castro

¶ 17 One other Arizona case requires special attention. In *State v. Castro,* the court of appeals held a rape victim's sexual history is admissible to show a victim's motive in bringing charges if the defendant has established a factual predicate connecting the victim's sexual history with the defense theory of motive. 163 Ariz. 465, 468–71, 788 P.2d 1216, 1219–21 (App.1989) (recognizing defendant's Sixth Amendment right to explore victim's motive as necessary element of presenting the defense).[3] As the *Castro* court stated, determining admissibility of the victim's prior sexual conduct "requires critical scrutiny of (1) the validity of defendant's probative theory; (2) the evidence defendant seeks to admit, as detailed by offer of proof; (3) the tendency of the evidence to support defendant's probative theory; and (4) the inflammatory or diversionary risks of placing such evidence before the jury." *Id.* at 469, 788 P.2d at 1220.

¶ 18 The evidence of Chelsie's prior abuse is admissible under *Castro.* First, Lujan's claim that Chelsie's previous sexual abuse resulted in misperception of physical contact is at least an arguably valid probative theory. Also, Lujan laid a foundation connecting the factual predicate of abuse with the defense legal theory. Moreover, Lujan made a sufficient offer of proof explaining why Chelsie might have incorrectly accused him of an inappropriate touching even if such touching did not occur. Finally, no prejudice, let alone unfair prejudice, would result from allowing the jury to hear evidence of Chelsie's prior abuse. Prior abuse of such a young victim does not stigmatize, impugn moral character, or attack chastity. Indeed, defense counsel disavowed any attempt to impeach Chelsie, saying he sought only to inform the jury of the factors that might help explain Chelsie's allegations. R.T., Aug. 1, 1994, at 23–24.

¶ 19 *Pope* does not allow a victim's sexual history to be used for character assassination, to attack truthfulness, or to establish evidence of willingness to engage in sexual relations on the theory that previous inter-

---

**3.** *Castro* cited *Davis v. Alaska,* 415 U.S. 308, 315–316, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974), for the principle that exploring a witness' motivation in testifying is an important function of the right of confrontation. 163 Ariz. at 468, 788 P.2d at 1219. Another United States Supreme Court case, *Delaware v. Van Arsdall,* held that "a criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed ... 'to expose to the jury the facts from which jurors ... could appropriately draw inferences relating to the reliability of the witness.'" 475 U.S. 673, 680, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674 (1986) (quoting *Davis,* 415 U.S. at 318, 94 S.Ct. at 1111). In *Olden v. Kentucky,* 488 U.S. 227, 109 S.Ct. 480, 102 L.Ed.2d 513 (1988), the Supreme Court applied these principles to a rape victim's testimony.

course implies consent to all future acts. We know from *Oliver* that *Pope* is applicable to both rape and child molestation cases. But as the court of appeals has stated:

> To conclude that *Pope* is applicable ... is not the end of analysis where sexual history is concerned. It should not have taken until *Pope* in 1976 for the law to determine that a woman's history of sexual relations is probative neither of her veracity as a witness nor of her consent to sexual relations in a given instance. There may, however, be other probative purposes than these, and *Pope* does not proscribe them all.

*Castro,* 163 Ariz. at 469, 788 P.2d at 1220. This case presents an instance in which such evidence was probative.

## CONCLUSION

 ¶ 20 The trial judge erred in rejecting both Lujan's offer of proof of prior incidents of sexual abuse and the expert evidence based on that history. That evidence might have provided the jury with a basis to conclude that Chelsie misperceived the admitted physical contact between her and Lujan in the pool.

¶ 21 We therefore conclude that the trial judge erred. Under the circumstances of this case, the error was certainly prejudicial. The court of appeals' decision is therefore vacated, the trial court's judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.

ZLAKET, C.J., JONES, V.C.J., and MARTONE and McGREGOR, JJ., concur.