2012 CO 47

**Michael William PIERSON, Petitioner**

**v.**

**The PEOPLE of the State of Colorado, Respondent.**

**No. 10SC269.**

Supreme Court of Colorado,
En Banc.

June 18, 2012.

Doug Wilson, Public Defender, Shann Jeffery, Deputy Public Defender, Denver, Colorado, Attorneys for Petitioner.

John Suthers, Attorney General, Katherine A. Aidala, Assistant Attorney General, Appellate Division, Denver, Colorado, Attorneys for Respondent.

Justice COATS delivered the Opinion of the Court.

¶ 1 Pierson sought review of the court of appeals' judgment in *People v. Pierson,* No. 06CA1880, 2010 WL 549208 (Colo.App. Feb.18, 2010) (not published pursuant to C.A.R. 35(f)), affirming his various convictions of felony sexual assault on a child and indecent exposure. The district court denied the defendant's pre-trial motion to admit evidence of the child's similar victimization by a teenage cousin, during substantially the same time period. The court of appeals upheld the trial court's ruling, finding both that the proffered evidence of prior sexual contact did not fall within the rape shield exception for the source of semen, pregnancy, disease, or similar evidence of sexual intercourse, and that it was not relevant for any of the other purposes offered by the defendant.

¶ 2 Because the proffered evidence amounted to evidence of specific instances of the victim's prior sexual activity that was neither included within the exception for alternate sources of semen, pregnancy, disease, or similar evidence, nor otherwise sufficiently probative as an alternate explanation for the victim's knowledge or pain, the trial court did not abuse its discretion in excluding the proffered evidence. The judgment of the court of appeals is therefore affirmed.

## I.

¶ 3 Michael William Pierson was charged with indecent exposure and thirteen sexual-assault-on-a-child-related felony offenses, all arising from allegations by his eight-year-old niece that he had exposed himself to her, touched her vagina, and made her touch his penis. Following a trial at which both the child-victim and the defendant testified, he was convicted of indecent exposure, as well as four counts of sexual assault on a child and sexual assault on a child by one in a position of trust, committed as part of a pattern of abuse. He was sentenced to concurrent terms of twenty-four years to life in prison.

¶ 4 Undisputed evidence at the trial indicated that the defendant, at the invitation of his sister, the child's mother, was temporarily living in a camper next to the family home. While living there, he helped around the house and babysat for the victim and her younger brother. After approximately six months, relations between the defendant and his sister became contentious, for unrelated reasons, and she decided to ask him to leave. Shortly before the defendant actually left, however, in a conversation about her mother's anger with him, the child-victim reported that the defendant had been touching her. Following the child-victim's more detailed statements to the police, the defendant was arrested.

¶ 5 Through both her testimony and various of her prior statements, initially made to her mother, the police, and a therapist but ultimately admitted at trial, the victim indicated that on several occasions during his stay, the defendant had sexually assaulted her. She indicated that these assaults consisted primarily of the defendant putting his hands down her pants and touching her vagina. She testified that they occurred both in the house while the two were watching TV and in the camper where the defendant lived. Her testimony indicated that no digital penetration actually occurred, but she described feeling pain when the defendant pressed hard on her vagina. She also testified to an incident in which the defendant pulled down his own pants and had her touch his penis, which she described as "sticking up" and as being "big and nasty and hairy."

¶ 6 The defendant testified on his own behalf and denied the victim's accusations. He offered that she may have been mad at him because he often prevented her from watching cartoons when he was watching the TV, but he offered no other explanation why

she would accuse him of sexually abusing her.

¶ 7 Prior to the trial, the defense moved to admit evidence of other sexual abuse that had come to light. During the police investigation, the victim at first denied, but later conceded, sexual contact by an adolescent male cousin during approximately the same time period. She described various incidents in which the two had exposed their genitalia to each other, and in which the cousin touched her vagina and she touched his penis. When confronted, the cousin, who was fifteen years old but was described as both mentally and physically underdeveloped, admitted to having sexual contact with the victim on five separate occasions.

¶ 8 In his motion and argument to the trial court, the defendant asserted a number of theories of admissibility, with reference to the presumptions of our rape shield statute. Specifically referencing a statutory exception for other sexual activity showing the source or origin of semen, pregnancy, disease, or any similar evidence of sexual intercourse, as well as the statutory formula for evaluating the relevance of a history of false reporting, the defendant offered this evidence to show an alternate source of "the witness's psychic and emotional energy;" to rebut an inference that the complainant would not have been able describe the details of the sexual abuse had the defendant not committed it; to challenge the victim's credibility by impeaching her; to show that another person rather than the defendant "inflicted emotional or mental injuries on the victim through sexual contact;" and to ensure his constitutional right to effective cross-examination. After oral arguments and further explanation by both counsel, the trial court denied the motion in its entirety, finding simply that neither of the two specific exceptions to the statutory presumption of irrelevance applied and that the statutory formula for nevertheless admitting evidence of specific instances of prior sexual conduct relevant to a material issue was not satisfied under the particular circumstances of this case.

¶ 9 On appeal, the court of appeals affirmed the trial court's ruling with regard to all of the defendant's theories of admissibili-

ty. We accepted further review of that judgment only with regard to the exclusion of the evidence as offered to demonstrate an alternate source for either physical injuries or precocious sexual knowledge of a child victim.

## II.

¶ 10 In the almost-forty years since the enactment of the so-called "rape-shield statute," section 18–3–407, C.R.S. (2011), this court has commented on its purposes, structure, and operation a number of times. See, e.g., *In re People v. Salazar*, 2012 CO 20, 272 P.3d 1067; *People v. MacLeod*, 176 P.3d 75 (Colo.2008); *People v. Weiss*, 133 P.3d 1180 (Colo.2006); *People v. Bryant*, 94 P.3d 624 (Colo.2004); *People v. Melillo*, 25 P.3d 769 (Colo.2001); *People v. Murphy*, 919 P.2d 191 (Colo.1996); *People v. McKenna*, 196 Colo. 367, 585 P.2d 275 (1978).

¶ 11 As we have previously indicated, the statute generally reflects a pronounced policy shift away from permitting inquisitions of witnesses in sexual assault cases, and toward greater procedural protection for those witnesses, to encourage them to come forward and confront defendants in sexual assault cases. *MacLeod*, 176 P.3d at 79. The statute accomplishes this purpose largely by excluding from certain enumerated classes of sexual-assault-related prosecutions, with two exceptions, evidence of specific instances of a victim's or a witness's prior or subsequent sexual conduct, opinion or reputation evidence concerning those same matters, and a victim's or witness's history of false reporting, unless an offer of proof is made by written motion at least thirty days prior to trial and the trial court determines, after an in-camera hearing, that the evidence is relevant to a material issue in the case. We have previously made clear that by "relevant to a material issue" the statute intends evidence with probative value on a matter of consequence that is not substantially outweighed by the countervailing policy considerations of CRE 403. *MacLeod*, 176 P.3d at 81; see also *Salazar*, ¶¶ 19–20. Should the court determine that evidence of sexual history is admissible according to this procedure, it must then prescribe the nature of the

evidence that may be admitted and the questions that may be posed. *MacLeod,* 176 P.3d at 80.

¶ 12 The presumption of irrelevance requiring such an in-camera determination of admissibility, however, does not apply with regard to evidence of prior or subsequent sexual conduct in two specific situations. No motion and determination made outside the presence of the jury is required with regard to evidence of prior sexual conduct involving the same actor, § 407(1)(a), or with regard to "evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, disease, or any similar evidence of sexual intercourse offered for the purpose of showing that the act or acts charged were or were not committed by the defendant," § 407(1)(b). Because the probative worth of any particular evidence is affected by the scarcity or abundance of other evidence on the same point, and therefore must be evaluated by comparing evidentiary alternatives, *People v. Saiz,* 32 P.3d 441, 446 (Colo.2001), evidence falling within these two exceptions may nevertheless be excluded, not only for other evidentiary reasons but even for lacking sufficient incremental probative value, when considered in light of other available evidence and the countervailing policy considerations of CRE 403. It is clear, however, that these two exceptions designate types of sexual conduct evidence that are not presumed to be so unfairly prejudicial as to require advance notice and an in-camera evaluation of their relevance.

¶ 13 In addition to evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, or disease, the second of these exceptions also includes a catch-all provision for "any similar evidence of sexual intercourse offered for the purpose of showing that the act or acts charged were or were not committed by the defendant." § 407(1)(b). On their face, the three examples listed in the statute all involve physical or demonstrative evidence susceptible of scientific testing and a determination, with some degree of certainty, whether a particular person might or might not be the source of the evidence. Without determining the precise characteristics shared by all three, and therefore the extent to which other evidence must be "similar" to come within the catch-all provision, that provision, by its owns terms is expressly limited to "evidence of sexual intercourse." And while the term "sexual intercourse" may not be statutorily defined with regard to unlawful sexual conduct, it is a commonly understood term, which describes one of the sexual acts constituting "sexual penetration," as distinguished from the acts of "sexual contact" proffered by the defense in this case. See § 18-3-401, C.R.S. (2011) (distinguishing and defining separately "sexual contact" and "sexual penetration"); see also, § 18-7-401(5) (specifically distinguishing between "masturbation" and "sexual intercourse"). Whether evidence of other sexual conduct offered to show the source of pain or precocious knowledge might ever be sufficiently similar to evidence "showing the source of semen, pregnancy, or disease," within the contemplation of the statute, such evidence could therefore never come within the statutory exception of section 407(1)(b), except to the extent that it were also evidence of sexual intercourse.

■ ¶ 14 More importantly, however, other than for purposes of circumventing the motion and in-camera determination required by section 407(2), it is inconsequential whether evidence of prior or subsequent sexual conduct offered to show the source of a victim's pain or precocious knowledge falls within one of the enumerated exceptions. As we have previously made clear, the statutory presumption of irrelevance applicable to other evidence of prior or subsequent sexual conduct in no way alters the required balancing of probativeness and countervailing considerations enumerated in CRE 403. See, e.g., *Salazar,* ¶ 19. Quite apart from the procedural safeguards applicable to evidence of specific instances of a victim's or witness's sexual conduct not falling within either of the statutory exceptions, the evaluation of relevance pursuant to the Colorado Rules of Evidence remains unchanged by the statute.

### III.

¶ 15 In the case before us today, the defendant filed a pre-trial motion to admit the disputed evidence of sexual conduct, and an

in-camera determination was made by the trial court, as required by section 18–3–407(2). But for the defendant's assertion that the trial court excluded this evidence solely on the grounds that it did not come within the exception of section 407(1)(b), without also considering whether it was otherwise relevant to a material issue, according to section 407(2)(e), it would therefore be unnecessary to consider the exception at all.

¶ 16 The defense motion in this case can hardly be described as a model of clarity, and the arguments of neither counsel appeared to reflect a terribly precise or accurate understanding of the statutory scheme. The defense motion was couched both in terms of the victim's history of false reporting, acknowledging that the admissibility of which was expressly governed by the procedure of section 407(2), and "alternate source" evidence, with specific reference to the exception of section 407(1)(b). In his argument to the trial court, defense counsel made no clear distinction between the two, indicating his understanding that the statutory reference to "a history of false reporting" in subsection (2) was intended to encompass any evidence probative of the falsity of the victim's accusation against the defendant in the instant case; and his understanding that the exception of subsection (1)(b) was intended to encompass any evidence of sexual activity "offered for the purpose of showing that the act or acts charged were or were not committed by the defendant." It was clear, however, that the court's ruling, which included findings that the exception of subsection (1)(b) did not apply to this case and that under the circumstances of this case, paragraph (2) of the statute, did not allow for the admission of the proffered evidence, was intended and was understood as a denial of the motion in its entirety. Defense counsel neither requested clarification nor suggested that some portion of the motion remained unresolved.

¶ 17 Because the proffered evidence was indisputably not evidence of sexual intercourse, it fell, for that reason if none other, outside the exception of section 407(1)(b). Nothing in that determination, however, implies that the proffered evidence could not be relevant to a material issue and therefore be admissible according to the provisions of section 407(2)(e). There can be little question that knowledge of sexual acts and sexual anatomy unexpected of a child of an alleged victim's chronological age might be suggestive of abuse, cf. *People v. Bowers*, 801 P.2d 511, 526 (Colo.1990) (child's precocious knowledge of sexual acts and sexual anatomy indicative of sexual abuse), and to the extent such evidence of sexual abuse by someone other than the defendant could provide a potential source for that knowledge, quite apart from the abuse allegedly committed by the defendant, it would necessarily have some probative worth.

¶ 18 There is, of course, no exception to the evidentiary requirement of relevance for "precocious knowledge" or, apart from the age and circumstances of the child in question, even any meaningful way to identify specific knowledge classifiable as "precocious." The probative value of evidence of a child's exposure to other sexual conduct and the balance of that probative value against countervailing considerations to admissibility will necessarily depend on the nature of the sex acts involved, as well as the age, circumstances, and other sources of knowledge to which the child in question might be privy. In this case, the defense offered no specific evidence about the sexual sophistication of this child in particular and no expert opinion concerning the sexual sophistication of children of the victim's age and circumstances in general.

¶ 19 Furthermore, the sexual knowledge displayed by the child-victim in this case involved little more than a basic awareness of male sexual anatomy and an awareness that applying pressure to her own external genitalia could be painful. Perhaps the only unexpected sexual knowledge included in her statements concerning the defendant's conduct was her description, in age appropriate terms, of male arousal, or an erect penis. To the extent that a fact-finder might infer, even without additional evidence, that a child of the victim's age would likely be unaware of this physiological occurrence unless she had witnessed it first-hand, the proffered evidence of sexual contact with the child-victim's cousin offered no alternate explanation for

such knowledge. There was no suggestion that the child-victim had ever seen her cousin's penis in an erect state, and in fact, the only evidence in this regard cast into question whether the cousin was capable of attaining an erection.

¶ 20 While it might be possible, with regard to children of a sufficiently tender age, to infer, without more, a complete lack of knowledge about sexual matters or even knowledge of the anatomy of members of the opposite sex, this could hardly be the case of a child old enough to interact with other children and come in contact with television or other forms of media entertainment. And while certain unusual sexual practices or perversions might seem beyond the imagination of even an older child, in the absence of direct exposure to them, that could hardly be the case with regard to basic anatomical information or sensations a child could experience regarding her own genitalia. While it may well be that a child's ability to describe pain of a particular nature might naturally lead to an inference that she must have experienced sexual abuse, nothing in the child-victim's general description of pain or discomfort resulting from hard touching of her external genitalia in this case suggests such a unique source of knowledge. In fact, no argument of this nature was ever made to the trial judge, and the only suggestion remotely related to such a theory was defense counsel's fleeting reference in his proffer to the source of physical, as well as psychological, injury.

■ ¶ 21 Trial courts are necessarily accorded considerable discretion in deciding questions concerning the admissibility of evidence, and an abuse of that discretion will be found only upon a showing that the ruling was manifestly arbitrary, unreasonable, or unfair. *People v. Rath*, 44 P.3d 1033, 1043 (Colo.2002). While a failure to understand the range or criteria upon which a court's discretion is to be exercised can amount to an abuse of that discretion, the record does not indicate any such failure in this case. The trial court expressly found that the requirements of section 407(2), which includes a requirement to admit evidence offered regarding sexual conduct of the victim or wit-

ness found to be relevant to a material issue in the case, were not satisfied. While the trial court did not make express findings concerning the balance of probative value and prejudicial effect in this case, the rape-shield statute imposes no such requirement. In light of the defendant's motion and offer of proof; the terms in which the trial court denied that motion; and the lack of any supporting foundation or clearly precocious knowledge demonstrated in the child-victim's accusation that might have been explained by admitting the prior abuse by her cousin, we cannot say that the trial court abused its discretion in excluding the proffered evidence.

### IV.

¶ 22 Because the proffered evidence amounted to evidence of specific instances of the victim's prior sexual activity that was neither included within the exception for alternate sources of semen, pregnancy, disease, or similar evidence, nor otherwise sufficiently probative as an alternate explanation for the victim's knowledge or pain, the trial court did not abuse its discretion in excluding the proffered evidence. The judgment of the court of appeals is therefore affirmed.

Chief Justice BENDER dissents.

Chief Justice BENDER, dissenting.

¶ 23 The majority holds that the trial court did not abuse its discretion by ruling that under the rape shield statute, section 18–3–407, C.R.S. (2011), undisputed evidence of sexual assaults of the child-victim by another person that occurred during the same time period and in a similar manner as the assaults alleged to have been committed by Pierson is not admissible to show the source of the child-victim's precocious sexual knowledge. The majority holds that this is so even where the prosecutor's theory of the case, as suggested in his opening statement and then explicitly stated his rebuttal closing argument, was that the victim could only have falsified her claims if she had "the most incredible imagination of any child on the face of this earth." I disagree with the majority because my review of the record

reveals that the trial court abused its discretion by improperly applying section 18–3–407(2)(e).

¶ 24 This erroneous evidentiary ruling violated Pierson's constitutional rights to a meaningful defense and to rebut and to confront the People's witnesses. In addition, on the record before us, there is no indication that the trial court considered Pierson's argument that the evidence of the cousin's concurrent and similar sexual abuse of the child-victim was "relevant to a material issue." § 18–3–407(2)(e). The trial court failed to state what prejudicial effect this testimony might have and did not balance these interests against the testimony's probative value. Hence, I respectfully dissent.

## I.

¶ 25 The child-victim reported that Pierson had sexually assaulted her on several occasions, primarily by putting his hands down her pants and touching her vagina. She stated that his touching her vagina felt painful like a crab pinching. She also described an incident in which Pierson allegedly pulled down his own pants and made her touch his penis.

¶ 26 Initially, the child-victim denied having ever been sexually assaulted by anyone aside from Pierson. However, in later discussions with the victim after the initiation of this case, the prosecutors reported that the victim revealed that she had been sexually assaulted by her fifteen-year-old male cousin before, during, and after the time period that she was allegedly assaulted by Pierson, with the most recent assault occurring after Pierson was arrested. Her description of the assaults by her cousin was markedly similar to her description of the alleged assaults by Pierson. She reported that her cousin had put his hand down her pants and touched her vagina. She described his touching her as feeling like something was pinching her. The victim's cousin admitted to police that he sexually assaulted the victim on at least five occasions. He described the five separate sexual assaults in great detail, which was consistent with the victim's description of the assaults. His description of the assaults included the cousin putting his hand down her pants and touching her vagina. Both exposed their genitals to one another. In addition, the victim touched his penis.

¶ 27 Pierson sought to introduce evidence of the cousin's assault to show that the victim had falsely reported that she had never previously been sexually assaulted, to show an alternate source of the victim's precocious sexual knowledge, and to impeach the victim and her mother. The trial court denied Pierson's request to introduce the uncontroverted evidence of the cousin's sexual assaults of the victim. The trial court's analysis was limited; the court stated: "under the circumstances of this case ... paragraph (2) of [the rape shield] statute[ ] does not allow for the admission of the proffered evidence." As a result of this ruling, the trial court also denied Pierson's request to introduce the evidence of the victim's assault by her cousin to impeach the victim's statement that she was telling the truth in her first police interview, when she stated that she had not previously been assaulted, and to impeach the victim's mother, who stated that the victim had never had the opportunity to view male genitals before.[1]

¶ 28 The prosecutor repeatedly argued to the jury that the victim's allegations should be believed because of the "significant" and "sensory" details she provided about the assaults. The prosecutor emphasized in his rebuttal closing argument that it would require "the most incredible imagination of any child on the face of this earth" for an eight-year-old child to fabricate the details of these sexual assaults.

¶ 29 My reading of the record fails to support the majority's statement that the victim could have gained this knowledge through "interact[ing] with other children" and coming into contact "with television or other forms of media entertainment." Maj. op. at ¶ 20. I find no testimony to support these statements. In addition, the victim's

---

1. It was undisputed that the victim's mother was aware of at least one incident where the victim's cousin exposed himself to the victim prior to the time that she was questioned as to whether the victim had previously seen male genitals.

mother testified that the victim had never been exposed to an adult male's genitals. Hence, I conclude that Pierson could only rebut both the prosecution's theory and impeach the victim and her mother with evidence of the concurrent sexual assaults by the victim's fifteen-year-old cousin.[2]

## II.

¶ 30 The majority states that withholding evidence of the cousin's sexual abuse of the child-victim did not foreclose Pierson's theory of an alternative source of precocious sexual knowledge because the jury could have reasonably concluded that an eight-year-old child would be able to vividly describe the acts that she accused Pierson of committing irrespective of whether she had actually been the victim of such abuse. *See id.* at ¶ 19. Although the majority admits that "to the extent such evidence of sexual abuse by someone other than the defendant could provide a potential source for that [precocious sexual] knowledge, ... it would *necessarily* have some probative worth," it nevertheless concludes that this evidence is not sufficiently probative. *Id.* at ¶ 17 (emphasis added). Absent case law support, the majority concludes that any probative value that could be derived from evidence of the concurrent and similar pattern of sexual assault by the cousin is minimized by the fact that an eight-year-old child-victim would likely be able to describe the acts committed against her even if she had never been a sexual assault victim. *Id.* at ¶¶ 18–19. The majority reaches this conclusion by reasoning that because an eight-year-old child can be presumed to have "come in (sic) contact with television or other

forms of media entertainment" that the ability of the victim in this case to describe, in graphic detail, both a sexually aroused adult male and a series of pedophilic fondlings had no bearing on the jury's determination of innocence or guilt. *Id.* at ¶ 20.

¶ 31 The majority's reasoning is at odds with decisions from other jurisdictions. *People v. Morse,* 231 Mich.App. 424, 586 N.W.2d 555, 555 (1998) (holding that the rape shield statute did not bar evidence of prior sexual assault on the victim because "if the jury is not allowed to learn of the [prior sexual] offenses against [the child-victim], then the jury will inevitably conclude that the [child-victim's] highly age-inappropriate sexual knowledge could only come from *defendant* having committed such acts" (emphasis original)); *see also LaJoie v. Thompson,* 217 F.3d 663 (9th Cir.2000) (same); *State v. Pulizzano,* 155 Wis.2d 633, 456 N.W.2d 325 (1990) (same); *State v. Rolon,* 257 Conn. 156, 777 A.2d 604 (2001) (same); *State v. Lujan,* 192 Ariz. 448, 967 P.2d 123 (1998) (same); *People v. Hill,* 289 Ill.App.3d 859, 225 Ill.Dec. 244, 683 N.E.2d 188 (1997) (same); *State v. Warren,* 711 A.2d 851 (Me.1998) (same); *State v. Budis,* 125 N.J. 519, 593 A.2d 784 (1991) (same); *State v. Grovenstein,* 340 S.C. 210, 530 S.E.2d 406 (S.C.App.2000) (same); *Commonwealth v. Ruffen,* 399 Mass. 811, 507 N.E.2d 684 (1987) (same); *Summitt v. State,* 101 Nev. 159, 697 P.2d 1374 (1985); *State v. Baker,* 127 N.H. 801, 508 A.2d 1059 (1986) (same); *People v. Ruiz,* 71 A.D.2d 569, 418 N.Y.S.2d 402 (N.Y.Sup.Ct.1979) (same); *Grant v. Demskie,* 75 F.Supp.2d 201 (S.D.N.Y.1999) (same).[3]

¶ 32 I agree with the reasoning of these other jurisdictions. I believe that a reason-

---

**2.** My reading of the record does not support the majority's suggestion that, absent expert testimony to the contrary, an eight-year-old child's ability to describe an adult male's genitals is not indicative of precocious sexual knowledge. *See* maj. op. at ¶¶ 18–20. Rather, the forensic interviewer of the victim, experienced in interviewing minor victims of sexual assault, suggested by her testimony at trial that based on her experience, eight-year-old children are generally expected *not* to be "familiar with that part of the body." The prosecutor did not dispute the presumption that it is unusual for an eight-year-old girl to have explicit knowledge of the male anatomy. He argued that, absent being sexually assaulted, an eight-year-old child would have to have an "incredible imagination" or be carefully coached

by her parents to have the knowledge that the victim in this case possessed.

**3.** In my view, the five-part test adopted by the Wisconsin Supreme Court in *Pulizzano* strikes an appropriate balance between the potential prejudice that the rape shield law seeks to protect against and the constitutional interests of a defendant in establishing an alternative potential source for a child-victim's uncharacteristically mature sexual knowledge. The *Pulizzano* court held that such evidence is only admissible if the defendant's offer of proof exhibits: "(1) that the prior acts clearly occurred; (2) that the acts closely resembled those of the present case; (3) that the prior act is clearly relevant to a material

able juror would necessarily conclude that an eight-year-old child could not possibly describe these acts in such graphic detail if she had not been the victim of sexual abuse. *People v. Bowers,* 801 P.2d 511, 533 (Colo. 1990) (Rovira, C.J., concurring in part and dissenting in part) ("Psychologists and social workers specializing in child psychology have agreed that a child's precocious knowledge of sexual acts and sexual anatomy, even more than posttraumatic stress symptoms, strongly suggests that the child has been sexually abused."). To conclude otherwise would require a juror to decide that, in the words of the prosecution, "[the victim] has the most incredible imagination of any child on the face of this earth." To me, the obvious inference that a juror would draw from the victim's description of the events is that she was in fact the victim of sexual abuse.

¶ 33 Of course, in the present case, we know that there is sadly little doubt that the child-victim was subjected to repeated sexual abuse by her cousin, which involved conduct that was nearly identical to the accusation against Pierson. Accordingly, we know that the detail and clarity with which the child-victim described Pierson's assault may have been informed by similar interactions with her cousin during the very same timeframe. The jury, however, did not have this information and thus was left to decide whether "[the victim] has the most incredible imagination of any child on the face of this earth" or Pierson was guilty. It is highly likely that the jury relied upon the unavoidable inference that the child-victim could not possibly know about the events which she so graphically described were it not for Pierson's unlawful conduct. Accordingly, the evidence of the cousin's concurrent and similar sexual assault on the child victim was substantially probative and the trial court's exclusion of this evidence denied Pierson the ability to present a possible alternative source of her sexual knowledge. *People v. Saiz,* 32 P.3d 441, 446 (Colo.2001) ("The probative worth of any particular bit of evidence is affected by the scarcity or abundance of other evidence on the same point.").

issue; (4) that the evidence is necessary to the defendant's case; and (5) that the probative value of the evidence outweighs its prejudicial ef-

¶ 34 Finally, I disagree with the majority's suggestion that Pierson should have presented expert testimony regarding the expected sexual sophistication of an eight-year-old child. Maj. op. at ¶ 18. The notion that expert testimony is necessary and sufficient to establish the admissibility of a victim's precocious sexual knowledge is unsupported by case law. I am not aware of any such requirement in practice. In my view, for proof of the precocious sexual knowledge of a victim to be relevant, expert testimony is not required. I also note that Pierson offered to present evidence at a motions hearing but that the trial court ruled on his motion solely on the basis of his uncontested offer of proof.

¶ 35 Given the similarity of the sexual abuse perpetrated by the child-victim's cousin and the conduct that she accused Pierson of during the same time period, I believe that the trial court violated Pierson's constitutional rights to a meaningful defense and to confront the witnesses against him by refusing to admit evidence of the cousin's admitted sexual abuse. *People v. Salazar,* 2012 CO 20, ¶ 17, 272 P.3d 1067 ("The Constitution guarantees a criminal defendant a meaningful opportunity to present a complete defense."). Such a constitutional violation necessarily amounts to an abuse of discretion. Hence, I respectfully dissent.

fect." 456 N.W.2d at 335. Here, Pierson's offer of proof contained facts establishing each of these factors.