NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

BRIAN S. NORMAN, *Appellant*.

No. 1 CA-CR 20-0341
FILED 03-30-2021

Appeal from the Superior Court in Maricopa County
No. CR2019-121663-001
The Honorable John R. Hannah, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Casey D. Ball
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Kevin D. Heade
*Counsel for Appellant*

---

## MEMORANDUM DECISION

Judge Samuel A. Thumma delivered the decision of the Court, in which Presiding Judge Kent E. Cattani and Judge Brian Y. Furuya joined.

---

**T H U M M A**, Judge:

**¶1**         A jury found Brian S. Norman guilty of pandering (Count 1), attempted transportation of a person for purposes of prostitution (Count 2) and possession of marijuana (Count 3). Norman appeals his Count 1 and 2 convictions and resulting sentences. Because Norman has shown no reversible error, his convictions and sentences are affirmed.

## FACTS[1] AND PROCEDURAL HISTORY

**¶2**         In May 2019, Norman began a conversation on Skout, a social networking app, with Detective Russo, a member of the human-trafficking unit of the Chandler Police Department. On Skout, Detective Russo appeared to be an 18-year-old woman living in New Mexico named "Jazzy P." After exchanging hundreds of messages, Norman proposed a business arrangement: he would pay for "Jazzy P." to move to Phoenix and offered up to $500 per week to perform massages, followed by the occasional "hand job," on customers who would visit Norman's house. Detective Russo, in character as Jazzy P., agreed. Norman bought Jazzy P. a bus ticket from Las Cruces to Phoenix and arranged to meet upon her arrival.

**¶3**         Norman was arrested when he arrived at the agreed-upon meeting point and charged with pandering, a Class 5 felony, attempted transportation a person for prostitution purposes, a Class 5 felony, and possession of marijuana, a Class 6 felony. Detective Russo was the named victim for Counts 1 and 2. The jury found Norman guilty as charged; the court suspended his sentence and placed him on three years of supervised probation. This court has jurisdiction over Norman's timely appeal

---

[1] On appeal, this court views the evidence in the light most favorable to sustaining Norman's convictions and resolves all reasonable inferences against him. *See State v. Karr*, 221 Ariz. 319, 320 ¶ 2 (App. 2008). It may affirm if the superior court was correct for any reason. *State v. Perez*, 141 Ariz. 459, 464 (1984).

pursuant to Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes (A.R.S.) §§ 12-120.21(A)(1), 13-4031 and -4033(A) (2021).[2]

## DISCUSSION

### I. The State Presented Sufficient Evidence to Sustain Norman's Pandering Conviction.

¶4        Norman argues the evidence does not support his conviction for pandering because (1) Jazzy P. was a "fictional persona," and (2) he did not knowingly encourage Detective Russo to engage in prostitution. This court's review of the sufficiency of evidence is limited to whether substantial evidence supports the verdict. *State v. Scott*, 177 Ariz. 131, 138 (1993); *see also* Ariz. R. Crim. P. 20(a)(1) (directing courts to enter judgment of acquittal "if there is no substantial evidence to support a conviction"). Substantial evidence is such proof that "reasonable persons could accept as adequate and sufficient to support a conclusion of defendant's guilt beyond a reasonable doubt." *State v. Mathers*, 165 Ariz. 64, 67 (1990) (quoting *State v. Jones*, 125 Ariz. 417, 419 (1980)).

¶5        Pandering is established if the State proves beyond a reasonable doubt that the defendant "knowingly . . . compel[led], induce[d] or encourage[d] any person to reside with that person, or with any other person, for the purpose of prostitution [or] [c]ompel[led], induce[d] or encourage[d] any person to become a prostitute or engage in the act of prostitution." A.R.S. § 13-3209(3)–(4). Norman argues that he cannot be guilty of pandering because his messages were not directed to an "actual person" as defined in A.R.S. § 13-105(30),[3] but to Russo's "fictional persona" Jazzy P. But the evidence shows that Norman's objective was to compel, induce or encourage an actual human — not a fictional character — to engage in prostitution.

---

[2] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

[3] "'Person' means a human being and, as the context requires, an enterprise, a public or private corporation, an unincorporated association, a partnership, a firm, a society, a government, a governmental authority or an individual or entity capable of holding a legal or beneficial interest in property."

**¶6** Norman exchanged hundreds of messages with Detective Russo, alias Jazzy P., arranging for transportation across state lines with the intent to employ Jazzy P. in an illicit massage parlor to perform sexual acts in exchange for money. Contrary to Norman's assertions, his actions were directed to one whom he fully believed to be a human being, with the clear intent to encourage that human being towards illicit action. Further, an actual human being, not a mere "persona," replied. That Norman was mistaken as to his intended victim's identity does not preclude him from pandering with the requisite intent. *See* A.R.S. § 13-204(A) (providing that a mistake of fact "does not relieve a person of criminal liability unless . . . [i]t negates the culpable mental state required for the commission of the offense" or it supports a justification defense); § 13-105(10)(b) ("Knowingly means, with respect to . . . a circumstance described by a statute defining an offense, that a person is aware *or believes* . . . that the circumstance exists.") (emphasis added).

**¶7** Pandering, much like the crime of solicitation from which it derives, is complete when encouragement is made with the requisite intent. *Cf. State v. Schwartz*, 188 Ariz. 313, 319 (App. 1996) (holding that the closely related crime of enticement for prostitution purposes, "[l]ike solicitation . . . does not require that the victim engage in what the enticer intends"); *State v. Flores*, 218 Ariz. 407, 410 (App. 2008) (recognizing that solicitation "requires no agreement or action by the person solicited" and "is complete when the solicitor, acting with the requisite intent, makes the request"). The jury therefore properly could find Norman encouraged Detective Russo — whom Norman believed to be a vulnerable teenage girl — to engage in prostitution in exchange for money and shelter. Thus, Norman's conviction on Count 1 is supported by sufficient evidence.

## II. The Admission of Purported Profile Evidence Was Not Fundamental Error Requiring Reversal.

**¶8** Norman argues the State introduced impermissible "profile evidence" and therefore his convictions on Counts 1 and 2 should be vacated. Norman failed to timely object to the admission of the evidence he now contests, meaning review on appeal is limited to fundamental error. *See* Ariz. R. Evid. 103; *State v. Escalante*, 245 Ariz. 135, 138 ¶ 1 (2018). As a result, Norman "bears the burden to establish that (1) error exists, (2) the error is fundamental, and (3) the error caused him prejudice." *State v. James*, 231 Ariz. 490, 493 ¶ 11 (App. 2013).

**¶9**        Profile evidence is an informal compilation of behavioral characteristics typical of persons who commit a particular crime. *See State v. Haskie*, 242 Ariz. 582, 585 ¶ 14 (2017). It is admissible in limited circumstances but is generally prohibited as substantive proof of guilt. *See, e.g., State v. Garcia-Quintana*, 234 Ariz. 267, 272–73 ¶¶ 23–24 (App. 2014) (citing *State v. Lee*, 191 Ariz. 542, 545 ¶ 14 (1998)).

**¶10**        Here, the State elicited testimony from officers who relied on their training and experience to describe behaviors typical to sex traffickers. For instance, jurors heard testimony that the term "daddy" is commonly used by sex traffickers as an alternative to "pimp;" that sex traffickers often "groom[]" victims they perceive as "struggl[ing];" that by providing a source of income, food and shelter as needed, sex traffickers "take control" of their victims; that victims may also be exploited by promises of "nice clothes," "nice cars," and "pretty jewelry;" and that illicit massage parlors are frequent fronts for prostitution.

**¶11**        Had this profile evidence been elicited only to assist the jury in its understanding of the State's case, it likely would not have been objectionable. *See, e.g., State v. Gonzalez*, 229 Ariz. 550, 553–54 ¶ 13 (App. 2012); *State v. Lujan*, 192 Ariz. 448, 451–52 ¶¶ 9–12 (1998). But officers also testified that Norman's messages to Jazzy P. were, generally speaking, "very consistent" with typical "grooming" behaviors; that Norman used the word "daddy" as the typical "pimp" would; and that Norman's proposed massage parlor, references to "hand jobs," and use of the sobriquet "obedient girl" were "red flags" and "consistent with" other sex-trafficking cases. Rather than providing context, this testimony invited the jury to draw the impermissible inference that because Norman possessed characteristics common to sex traffickers, he was, in fact, a sex trafficker. *See Escalante*, 245 Ariz. at 142 ¶ 23.

**¶12**        When an error is shown, fundamental error analysis requires a defendant to then show "that (1) the error went to the foundation of the case, (2) the error took from the defendant a right essential to his defense, *or* (3) the error was so egregious that he could not possibility have received a fair trial." *Id.* at 142 ¶ 21 (citing *State v. Henderson*, 210 Ariz. 561, 568 ¶ 26 (2005)). On appeal, Norman argues only that the improperly admitted evidence went to the foundation of the case. An error generally "goes to the foundation of a case" if it "relieves the prosecution of its burden to prove a crime's elements, directly impacts a key factual dispute, or deprives the defendant of constitutionally guaranteed procedures." *Escalante*, 245 Ariz. at 141 ¶ 18.

¶13      Given the totality of the circumstances, Norman has not shown fundamental error. The improper profile evidence here was not the "linchpin" of the State's case, as was the profile evidence in *Escalante*. *Id.* at 143 ¶ 27. Instead, it was the content of Norman's messages to Russo that featured prominently in the State's case against him. Those messages, standing alone, sustain convictions on both the pandering and attempted transportation charges. Conversely, Norman fails to show that the challenged evidence relieved the State of its burden of proof, affected a key factual dispute or deprived him of any constitutionally guaranteed procedures or rights. *Cf. State v. Dickinson*, 233 Ariz. 527, 531 ¶ 12 (App. 2013) (relief from burden of proof); *Escalante*, 245 Ariz. at 143 ¶ 26 (direct effect on key factual dispute); *Henderson*, 210 Ariz. at 568 ¶ 25 (deprivation of constitutionally guaranteed procedure). Thus, because the evidence did not go to the foundation of the case, its admission does not constitute fundamental error requiring reversal.

## CONCLUSION

¶14      Norman's convictions and resulting sentences are affirmed.



AMY M. WOOD • Clerk of the Court
FILED:      HB