2013 COA 55

The **PEOPLE** of the State of Colorado, Plaintiff–Appellee,

v.

Pedro **OSORIO–BAHENA**, Defendant–Appellant.

**Court of Appeals No. 09CA1743**

Colorado Court of Appeals, Div. IV.

Announced April 25, 2013

Rehearing Denied June 6, 2013

Certiorari Dismissed Oct. 25, 2013

John W. Suthers, Attorney General, Katharine J. Gillespie, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee

Douglas K. Wilson, Colorado State Public Defender, Cory D. Riddle, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by JUDGE LICHTENSTEIN

¶ 1 Defendant, Pedro Osorio–Bahena, appeals the judgment of conviction entered on jury verdicts finding him guilty of two counts of attempted sexual assault. He also appeals the sentence imposed.

¶ 2 As a matter of first impression, we conclude that (1) a victim's limited mental capacity, just like a victim's young age, permits an inference that the victim's sexual knowledge could be explained only by the

alleged assault, and therefore evidence offered to show an alternative source of sexual knowledge may overcome the rape shield's presumption of irrelevance; and (2) evidence of prior sexual contact may be both relevant and admissible, whether or not the prosecution raises this inference. We remand with directions to the trial court to make further findings concerning admissibility of such evidence, and we reject defendant's remaining contentions.

## I. Background

¶ 3 St. Paul's House is a residential care facility for boys with developmental and mental health issues. In 2007, S.S., an eighteen-year-old resident of the facility, reported that defendant, who worked at the facility, had sexually assaulted him. Because of developmental disabilities, S.S. had the mental capacity of a five-year-old. In S.S.'s initial report to other employees at the facility, he described both oral and anal sex initiated by defendant. Defendant was charged with sexual assault against an at-risk adult.

### A. Trial Court's August 3, 2008, Order

¶ 4 Before the case first went to trial in October 2008, defendant gave notice of his intent to introduce evidence of S.S.'s prior sexual conduct. He asserted that his theory of defense hinged on S.S.'s prior knowledge, experience, and participation in sexual conduct, because he intended to show at trial that S.S. either attempted to initiate, confused, imagined, exaggerated, or otherwise mentally created the events that he later claimed occurred between him and defendant. Defendant explained the evidence was relevant to prove the source of S.S.'s sexual knowledge given that S.S. had the mental capacity of a child, and, absent these prior experiences, would have had no knowledge or understanding of sexual conduct.

¶ 5 As pertinent to this appeal, defendant sought to introduce evidence of the following prior sexual incidents:

1. In 2004, S.S. had consensual oral sex with another resident at the House, and the other resident had unsuccess-

fully attempted to have anal sex with S.S.

2. In 2006, S.S. had consensual oral sex with a different resident at the House.

3. In 2002, S.S. may have been sexually assaulted by his mother's boyfriend.

¶ 6 Defendant also offered to "work with the court and the prosecution" to fashion a limiting instruction to restrict the jury's consideration of these prior incidents to their proper purpose.

¶ 7 The court issued a written order on August 3, 2008, excluding evidence of these prior incidents. The court determined that defendant did not rebut the rape shield statute's presumption of irrelevance. *See* § 18-3-407, C.R.S. 2012. It found that (1) the prior incidents of oral and attempted anal sex in 2004 and 2006 were not sufficiently similar to the charged offense to explain a source of sexual knowledge; (2) the 2002 allegation concerning the mother's boyfriend was too remote in time to have any evidentiary value in explaining the basis of S.S.'s sexual knowledge; (3) unless the prosecution presented evidence or otherwise suggested that the victim's sexual knowledge must have come from an assault by defendant, the prior incident evidence was statutorily barred; and (4) defendant had other evidence available "which could explain S.S.'s sexual knowledge without presenting specific, detailed accounts of prior sexual acts involving [S.S.]."

¶ 8 The court also rejected defendant's argument that S.S.'s limited mental capacity would suggest a lack of knowledge or understanding of sexual conduct, concluding that age, but not IQ, correlates with sexual knowledge.

### B. Trial Court's Denial of Motion to Reconsider

¶ 9 Defendant filed a motion requesting the court to reconsider its August 3, 2008, order. In this motion, defendant also asked the court to address his revised notice to introduce other evidence "in keeping with the court's previous findings that there is other evidence available to the defense which could explain the victim's sexual knowledge." [1]

---

1. Defendant also asked the court to reconsider its ruling by making findings with regard to S.S.'s

prior false reports of sexual assaults.

¶ 10 In this revised notice, defendant enumerated nine areas of potential testimony to show that S.S. was "obsessed with sex," was "very sexualized," had been "involved in numerous encounters involving sex with other residents (the defense does not intend to give specifics),"[2] and had witnessed sex in pornographic movies or between his mother and her boyfriend. Defendant argued that this other evidence would explain S.S.'s sexual knowledge and support the defense theory that S.S. initiated the sexual contact in this case.

¶ 11 In an oral ruling issued on October 1, 2008, the court observed that several issues were raised in the motion and stated that it would address them separately. It identified the first issue as the request to "reconsider the court's prior ruling," and the second issue as the request to "introduce additional evidence," which included the sub-issues of "other false allegations" and "evidence regarding sexual conduct."

¶ 12 As to the first issue, the court denied defendant's request to reconsider its August 3 order, stating that it was going to "persist in that ruling" as to the prior incidents on the "basis stated at the prior hearing and in the court's prior ruling."

¶ 13 As to the second issue, the court deferred ruling on the evidence of other false allegations, and it excluded the nine areas of additional evidence of sexual reputation and conduct because that evidence was not relevant and would pose a significant risk of unfair prejudice to S.S. The court explained, "This is slightly a [CRE] 403 analysis, but that 403 analysis needs to be done with [section] 18–3–407 in terms of relevance coming in, if it is able to get past the statutory presumption of irrelevance...." The court concluded that the evidence was probably not going to be relevant, "[a]t least in the People's case[-]in[-]chief." It acknowledged that its order could change depending upon the trial testimony, but ruled the evidence inadmissible under CRE 403. The court stated

that the evidence that S.S. was obsessed with sex, was highly sexualized, and had had a number of sexual encounters, sent a message to the jury that "[t]his is a young man who has sexual encounters so there's no harm, no foul, it's all right what happened, if anything happened." It noted that the evidence that S.S. witnessed pornographic movies or saw others having sexual intercourse is "somewhat different" but nonetheless ruled that such evidence would "simply be more prejudicial than probative."

¶ 14 The case was tried and ended in a hung jury.

## C. Adoption of Prior Orders

¶ 15 Just before the 2009 retrial, a second judge rejected defendant's request to reconsider the first trial court's 2008 rulings. A third judge presided over the retrial, which resulted in a conviction on two counts of attempted sexual assault against an at-risk adult. These convictions were merged into a single conviction, and defendant was sentenced to an indeterminate prison term of six years to life.

## II. Evidence of S.S.'s Prior Sexual Conduct

¶ 16 Defendant limits his argument on appeal to the propriety of the August 3, 2008, order, which was applied to his second trial. He contends that the exclusion of evidence that described S.S.'s prior incidents of oral and anal sex, offered to explain an alternative source of S.S.'s sexual knowledge, was an abuse of discretion. He urges application of the constitutional harmless error standard to the trial court's abuse of discretion because he was deprived of his constitutional rights to present a defense and to confront the witnesses against him.

¶ 17 We begin our analysis by acknowledging that, *if error*, the exclusion of the evidence would not be harmless beyond a reasonable doubt.[3] *See Bernal v. People*, 44

---

2. Defendant, while informing the court that "the defense does not intend to give specifics," substantiated this factual assertion with an attachment containing numerous incident reports.

3. Contrary to the Attorney General's assertion, defendant preserved his contention as a constitutional error and the constitutional harmless error standard would apply. *See People v. Melendez*, 102 P.3d 315, 322 (Colo.2004) (we do not require

P.3d 184, 200 (Colo.2002). An erroneous evidentiary ruling may rise to the level of constitutional error if it "deprived the defendant of any meaningful opportunity to present a complete defense." *See Krutsinger v. People*, 219 P.3d 1054, 1061–62 (Colo.2009); *People v. Garcia*, 179 P.3d 250, 255 (Colo.App. 2007). Under this standard, reversal is required unless we are "confident beyond a reasonable doubt that the error did not contribute to the guilty verdict." *Bernal*, 44 P.3d at 200. This test is not whether a guilty verdict would surely have been rendered in a trial without the error, but rather whether the guilty verdict in this trial was surely unattributable to the error. *See id.* (citing *Blecha v. People*, 962 P.2d 931, 942 (Colo. 1998)).

¶ 18 At trial, the alternative source evidence was central to the defense and therefore pivotal to the jury's resolution of defendant's case. Indeed, defendant asserted that his theory of defense "hinge[d] entirely on [S.S.'s] prior knowledge, experience, and participation in sexual conduct and abuse." Neither eyewitnesses nor any physical evidence corroborated S.S.'s allegations in this case. As discussed below, because the court excluded the evidence of an alternative source of knowledge, there was no evidence from which the jury could infer that S.S. had any experience or knowledge of sexuality or the particular kind of sexual contact he described in his testimony other than as a result of an assault by defendant. Consequently, if the evidence were improperly excluded, we cannot conclude that the guilty verdict in this trial was surely unattributable to the error. *See id.*

¶ 19 Thus, we turn to whether the ruling excluding the prior act evidence was error.

¶ 20 We first evaluate whether the court abused its discretion by concluding that evidence of S.S.'s mental capacity was irrelevant. With the exception of the ruling ex-

cluding the 2002 incident,[4] we conclude that the trial court abused its discretion in finding this evidence irrelevant. However, because it is the province of the trial court, in the first instance, to evaluate the admissibility of evidence under CRE 403, we remand the case for further findings in this regard.

### A. Standard of Review

¶ 21 We review a trial court's evidentiary rulings, including its determination of admissibility under the rape shield statute, for abuse of discretion. *See People v. Melillo*, 25 P.3d 769, 772 (Colo.2001); *People v. Wallen*, 996 P.2d 182, 185 (Colo.App.1999). An abuse of discretion occurs if the trial court's ruling is manifestly arbitrary, unreasonable, or unfair. *Melillo*, 25 P.3d at 772. Also, a ruling based on an erroneous view of the law or on a clearly erroneous assessment of the evidence amounts to an abuse of discretion. *People v. Segovia*, 196 P.3d 1126, 1129 (Colo. 2008).

### B. Relevance

¶ 22 We conclude that the court's ruling, finding that the 2004 and 2006 prior incidents of oral and anal sex were irrelevant, was an abuse of discretion.

#### 1. Rape Shield Statute's Presumption of Irrelevance

¶ 23 The rape shield statute, section 18–3–407, "reflects a pronounced policy shift away from permitting inquisitions of witnesses in sexual assault cases, and toward greater procedural protection for those witnesses, to encourage them to come forward and confront defendants in sexual assault cases." *Pierson v. People*, 2012 CO 47, ¶11, 279 P.3d 1217, 1219. Accordingly, the statute "creates a presumption that evidence of a victim's prior or subsequent 'sexual conduct'

---

"talismanic language" to preserve particular arguments for appeal).

**4.** The only evidence defendant provided of the 2002 incident was a report that S.S.'s mother's boyfriend might have sexually abused S.S. five years earlier, but no further substantiation or details of the allegation were provided. The court excluded evidence of the incident, explain-

ing that "[e]ven if there was evidence [showing it had occurred]," it was too remote in time to be relevant. We decline to disturb this ruling on appeal. *Fletcher v. People*, 179 P.3d 969, 974 (Colo.2007) ("evidence which is too remote either in time or logical relation to a matter in dispute should not be admitted").

is irrelevant and thus inadmissible." *People v. Williamson*, 249 P.3d 801, 802 (Colo.2011).

¶ 24 To strike a balance between a defendant's right to confront his or her accuser and the victim's privacy interest, the statute "condition[s] admission of evidence of the victim's sexual history on the defendant's preliminary showing that it is relevant." *People v. Aldrich*, 849 P.2d 821, 824 (Colo.App. 1992) (quoting *People v. McKenna*, 196 Colo. 367, 374, 585 P.2d 275, 279 (1978)). Thus, along with two express exceptions to the presumption of irrelevance, the statute recognizes that a proponent of sexual conduct evidence may overcome the presumption if, after following specified procedures, the trial court finds that the evidence is relevant to a material issue in the case. *Williamson*, 249 P.3d at 802; *see also* § 18–3–407(2), C.R.S. 2012. Unless an accused can make a preliminary showing that the evidence is relevant to some issue in the case, an inquiry into a victim's prior or subsequent sexual conduct is barred. *People v. Harris*, 43 P.3d 221, 225 (Colo.2002).

### 2. Colorado Rules of Evidence

¶ 25 The rape shield statute's procedural safeguards do not change the evaluation of relevance under the Colorado Rules of Evidence. *Pierson*, 279 P.3d at 1220. Prior sexual conduct evidence is considered relevant if it has a tendency to make a fact of consequence more or less probable than it would be without the evidence. *See* CRE 401. And the statutory presumption of irrelevance in no way alters the required balancing of probative value and the countervailing considerations enumerated in CRE 403. *Pierson*, 279 P.3d at 1220.

### 3. Victim's Age or Mental Capacity

¶ 26 In evaluating the relevance of a victim's prior sexual conduct, the correlation between a victim's age and his or her sexual knowledge is recognized by a majority of jurisdictions, including Colorado. *See People v. Kyle*, 111 P.3d 491, 498 (Colo.App.2004) (evidence of prior sexual conduct was not relevant where, among other things, "the victim was sexually mature when the asserted assaults commenced"); *see also, e.g., State v. Molen,* 148 Idaho 950, 231 P.3d 1047, 1052 (Ct.App.2010) (the probative value of a victim's other sexual conduct "will ordinarily be inversely proportional to the child's age, for the younger the child, the stronger the likelihood of a jury inference that the child would be too sexually innocent to have fabricated the allegations against the defendant").

¶ 27 Consequently, evidence of prior sexual conduct may be relevant to show an alternative source for a young victim's sexual knowledge. *Pierson*, 279 P.3d at 1221. To the extent such evidence of sexual contact by someone other than the defendant could provide a potential source for that knowledge, quite apart from the abuse allegedly committed by the defendant, it would necessarily have some probative worth. *Id.*; *see, e.g., People v. Villa*, 240 P.3d 343, 354–55 (Colo. App.2009); *Aldrich*, 849 P.2d at 824. Similarly, a majority of the jurisdictions to have addressed this issue hold that "evidence of a young victim's sexual history is relevant where the defendant seeks to admit the evidence to show a source for the victim's sexual knowledge." *State v. Grovenstein*, 340 S.C. 210, 530 S.E.2d 406, 410–11 (Ct.App.2000) (collecting cases). These cases explain that such evidence rebuts "the inference that a child victim could not describe the sexual acts unless the defendant had committed the alleged acts." *Id.* at 410.

¶ 28 A victim's mental capacity is also relevant. Although we have not found a Colorado case directly addressing this issue, other jurisdictions have concluded that mental capacity, like age, raises the inference of a victim's lack of sexual knowledge.

¶ 29 In *Hammond v. State*, 660 So.2d 1152, 1157 (Fla.Dist.Ct.App.1995), the court considered whether the jury might infer a lack of sexual knowledge based on the victims' mental ages. *Hammond* involved a seventeen-year-old with a "mental age of six to eight," an eighteen-year-old with a "mental age of five or six," and a thirteen-year-old with a "mental age of eight to ten." 660 So.2d at 1154–55. There, the court concluded that the victims' prior sexual conduct was relevant:

Because of the mental deficiencies of these boys, the jury was likely to perceive them

as naive, innocent, and unable to imagine sexual activity in detail. The fact that the prior sexual conduct had occurred would have affected the jury's evaluation of the accusers' testimony.

*Id.* at 1157.

¶ 30 The court in *State v. Marks,* 262 P.3d 13 (Utah Ct.App.2011), reached a similar conclusion:

Generally, there is less need to explain the sexual knowledge of a teenage boy than that of a younger child. Due to his mental disabilities, however, [the victim] was not a typical fourteen- or sixteen-year-old child but was instead operating at the level of a much younger child in some respects. Under the unique facts of this case, we conclude—as the parties have presumed—that [the defendant] had a legitimate interest in presenting evidence of an alternative source of [the victim's] sexual knowledge.

262P.3d at 28; *see also State v. Kroshus,* 447 N.W.2d 203, 205 (Minn.Ct.App.1989) (prior described incident of sexual abuse was relevant to show alternative source of sexual knowledge of an adult victim with a mental age of seven and a half).

### 4. Knowledge of Particular Sexual Acts

■ ¶ 31 Admissibility of a child victim's prior sexual conduct necessarily depends on "the nature of the sex acts involved, as well as the age, circumstances, and other sources of knowledge to which the child in question might be privy." *Pierson,* 279 P.3d at 1221. Courts might also consider how the victim reports and describes the charged sexual assault, the degree of similarity between the alleged assault and the prior sexual activity to which the victim was exposed, and whether less prejudicial means are available to show the victim's prior sexual knowledge. *See, e.g., Molen,* 231 P.3d at 1052–53.

### 5. First Trial Court's Findings

¶ 32 In its August 3 order, the trial court found that the 2002, 2004, and 2006 incidents were irrelevant for four reasons: (1) the prior incidents had "only limited similarities" with the charged offense; (2) mental capacity, unlike age, has no correlation to precocious sexual knowledge; (3) the evidence would remain irrelevant unless the prosecution suggested to the jury that defendant was the sole source of S.S.'s sexual knowledge; and (4) "other evidence" was available to defendant to demonstrate at trial how S.S. obtained his sexual knowledge. With the exception of the 2002 incident, we conclude that the court's finding of irrelevance cannot be sustained.

¶ 33 As the first reason, the court determined that the 2004 and 2006 prior incidents were not sufficiently similar to the charged offense. It found that these incidents involved "mutual oral sex," as opposed to nonconsensual oral sex; one incident involved "attempted, although unsuccessful, anal intercourse"; the incidents involved "other residents rather than an employee of the facility"; and S.S.'s "account of the present offense does not contain specific descriptions of particular sexual actions or of particular anatomy which necessarily raise the inference that [S.S.] must have gained such knowledge by being assaulted by ... defendant."

¶ 34 Although a court may consider the nature of the sexual acts involved and the degree of similarity between the alleged assault and the prior sexual acts, *see Pierson,* 279 P.3d at 1221; *Molen,* 231 P.3d at 1052–53, most of the dissimilarities relied upon by the trial court have no bearing on whether S.S. knew about oral and anal sex. Regardless of the noted dissimilarities, the jury could find that the prior acts "enabled [S.S.] to describe acts of the particular type that [he] now ascribes to ... defendant." *Molen,* 231 P.3d at 1052; *compare State v. Oliver,*158 Ariz. 22, 760 P.2d 1071, 1077 (1988) ("the defendant must establish that the prior sexual act was sufficiently similar to the present sexual act to give the victim the experience and ability to contrive or imagine the molestation charge"), *and State v. Padilla,*110 Wis.2d 414, 329 N.W.2d 263, 271 (Ct.App.1982) ("the prior sexual relations gave her the same type of sexual knowledge that she testified to concerning the present sexual assault"), *with Marks,* 262 P.3d at 28 ("dissimilar sexual activity has little relevance to a child's ability to fabricate allegations of sexual abuse against a defendant"). To the extent that

"thumb kissing" and touching defendant's "chi chi's,"[5] which S.S. described as part of the alleged assault, were not included in the prior incidents, the dissimilarity did not render the evidence irrelevant.

¶ 35 As the second reason, the trial court also concluded that S.S.'s limited mental capacity was not "correlative" with sexual knowledge. We disagree and conclude, consistent with cases in other jurisdictions, that mental capacity may give rise to an inference that the victim lacked sexual knowledge. *See Hammond*, 660 So.2d at 1157 (a jury is likely to perceive a person with limited mental capacity as naive, innocent, and unable to imagine sexual activity in detail). And, consequently, we conclude that S.S.'s limited mental capacity, which the prosecution did not dispute, favored admission of his prior sexual conduct to show an alternative source of sexual knowledge.

¶ 36 As a result, the trial court's finding that S.S.'s description of the alleged assault did not show precocious sexual knowledge is at odds with S.S.'s limited mental capacity, which apparently was equivalent to that of a five-year-old child. A typical five-year-old child would not possess sufficient knowledge to describe oral and anal sex, as S.S. did here, embellishing his description of the latter by demonstrating a "humping" motion. Thus, the jury here might have inferred that S.S. could only describe such conduct because defendant had, in fact, assaulted him in this manner. *See Pierson*, 279 P.3d at 1221 (knowledge of sexual acts and sexual anatomy unexpected of a child of the victim's age might suggest abuse); *cf. People v. Bowers*, 801 P.2d 511, 526 (Colo.1990) (child's precocious sexual knowledge indicative of sexual abuse).

¶ 37 As the third reason, the trial court, relying on *State v. Samuels*, 88 S.W.3d 71, 82 (Mo.Ct.App.2002), concluded that the evidence would not be relevant absent the prosecution's implication that defendant was the sole source of the victim's sexual knowledge. However, we are persuaded that a jury might infer guilt based on S.S.'s presumed lack of sexual knowledge whether or not the prosecution specifically argued this inference.

*See Pierson*, 279 P.3d at 1221; *see also State v. Jacques*, 558 A.2d 706, 708 (Me.1989) ("Where the victim is a child, as in this case, the lack of sexual experience is automatically in the case without specific action by the prosecutor."); *State v. Payton*, 142 N.M. 385, 165 P.3d 1161, 1165 (Ct.App.2007) ("the inference of guilt does not depend on whether the prosecutor expressly raises it"); *but see Samuels*, 88 S.W.3d at 82 (noting relevance of evidence because prosecutor placed this inference of guilt in issue).

¶ 38 Nevertheless, in this case, the prosecution specifically raised the inference and encouraged the jury to infer guilt based on S.S.'s knowledge (or lack thereof). During its closing argument, the prosecution told the jury that defendant "took" S.S. and manipulated his innocence, and that it should look at S.S.'s "knowledge," informing the jury that the only thing S.S. "is able to relate about this world are things that absolutely happened to him."

¶ 39 Finally, as to the fourth reason, the trial court found that "other evidence" was available to defendant to explain S.S.'s sexual knowledge to the jury. *See Pierson*, 279 P.3d at 1222 (noting other evidence that could demonstrate a child victim's sexual knowledge); *People v. Arenda*, 416 Mich. 1, 330 N.W.2d 814, 818 (1982) ("Counsel could inquire whether the victim had any experiences (e.g., reading a book, seeing a movie, conversing with others, schoolwork or witnessing others engaged in such activity) which aided him or her in describing the conduct that is alleged."). However, in its October 1, 2008, ruling, the court ultimately excluded the "other available evidence" which defendant sought to introduce at trial.

### 6. Conclusion

¶ 40 We conclude that the trial court abused its discretion in finding that evidence of S.S.'s prior sexual conduct was not relevant to show an alternative source of S.S.'s sexual knowledge because (1) S.S.'s limited mental capacity may give rise to an inference of a lack of sexual knowledge; (2) evidence of prior incidents may show an alternative

---

**5.** The parties' briefs explain that this is a Spanish term that refers to a person's chest.

source of sexual knowledge, regardless of whether the prosecution injects the issue into the trial; and (3) the dissimilarities here did not tend to negate such knowledge.

### C. CRE 403

¶ 41 Given its relevance, the evidence of S.S.'s prior sexual conduct may properly be excluded only if its probative value is substantially outweighed by the dangers specified in CRE 403. *See Pierson*, 279P.3d at 1220 (when a proponent of the evidence overcomes the statutory presumption of irrelevance, this in no way alters the required balancing of probativeness and countervailing considerations enumerated in CRE 403).

¶ 42 Initially, we note that the trial court made CRE 403 findings in an October 1 ruling. However, those findings do not appear to pertain to defendant's request to introduce the 2004 and 2006 incidents of oral and anal sex to show an alternative source of sexual knowledge. Rather, the court issued CRE 403 findings when it was separately addressing defendant's proposed additional nonspecific evidence that defendant offered for the purpose of showing that S.S. was "highly sexualized" and "obsessed with sex." [6]

¶ 43 The court "persisted" in its August 3 relevancy ruling regarding the 2004 and 2006 incidents of oral and anal sex, concluded that the evidence did not overcome the statute's presumption of irrelevance, and excluded it on that basis alone. Thus, it did not engage in a CRE 403 balancing of this evidence.

¶ 44 In light of our conclusion that evidence regarding S.S.'s prior sexual conduct was relevant, and because it is the province of the trial court, in the first instance, to evaluate the admissibility of evidence under CRE 403, we elect to remand the case to the trial court to evaluate the admissibility of the evidence under CRE 403. *See Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 387, 128 S.Ct. 1140, 170 L.Ed.2d 1 (2008) (reversing an appellate court's decision to undertake its own balancing under Fed. R. Evid. 403,

stating, "With respect to evidentiary questions in general and Rule 403 in particular, a district court virtually always is in the better position to assess the admissibility of the evidence in the context of the particular case before it.").

### III. Competency

¶ 45 Defendant contends the first trial court erred by denying his motion for an involuntary psychiatric competency evaluation of S.S. and finding that S.S. was competent to testify. He also contends the second trial court erred by adhering to the latter ruling. We discern no abuse of discretion.

¶ 46 "Persons who are of unsound mind at the time of their production for examination" shall not be allowed to testify. § 13–90–106(1)(a), C.R.S. 2012. However, because a witness is generally presumed competent to testify, the party challenging competency carries the burden to prove otherwise. *People v. Alley*, 232 P.3d 272, 275 (Colo.App.2010).

¶ 47 Determining witness competency is a matter of trial court discretion, *People v. Alexander*, 724 P.2d 1304, 1307 (Colo. 1986), as is the manner and scope of the court's competency examination. *People v. Trujillo*, 923 P.2d 277, 281 (Colo.App.1996). But because an involuntary psychiatric examination could cause the victim "emotional trauma, embarrassment or intimidation," *People v. King*, 41 Colo.App. 177, 179, 581 P.2d 739, 741 (1978), it should be ordered only for a "compelling reason." *People v. McGhee*, 677 P.2d 419, 422 (Colo.App.1983).

### A. Examination

¶ 48 Before the first trial, defendant sought an involuntary psychiatric examination of S.S. on the grounds that the trial court and other people involved with him lacked the expertise to assess his competency and that such an examination was essential because S.S.'s allegations were uncorroborated. However, a victim's developmental disability does not alone constitute a compel-

---

**6.** We agree that evidence offered to show that a sex assault victim is "highly sexualized" and "obsessed with sex" would be unduly prejudicial.

*See People in Interest of K.N.*, 977 P.2d 868, 870 (Colo.1999) (excluding evidence offered to show the victim's promiscuity).

ling reason to order an involuntary examination. *See People v. Estorga,* 200 Colo. 78, 82, 612 P.2d 520, 524 (1980) (developmental disability of ten-year-old victim). Rather, "[i]f a witness has the capacity to observe, recollect, communicate and understand the oath to tell the truth, [he or] she is competent to testify and any mental deficiency is considered only insofar as it affects the weight to be given [his or] her testimony." *Alexander,* 724 P.2d at 1307.

¶ 49 Here, the pretrial testimony by the director of the facility and our review of the videotaped interviews of S.S. both support the trial court's findings that S.S. could recall the incident and understand the difference between the truth and a lie. *Cf. People v. Martin,* 222 P.3d 331, 334 (Colo.2010) ("we conduct an independent review of the interrogation video").

¶ 50 Accordingly, we discern no abuse of discretion in the refusal to order an involuntary examination.

### B. Competency

¶ 51 We also reject defendant's argument that the trial court erred in concluding that S.S. was competent. The trial court examined S.S. before trial and determined that he was able to "understand the questions and relay factually truthful and correct information." The court also found that S.S. "understands the concept of things that are true and not true." These findings are supported by the record. *See Trujillo,* 923 P.2d at 281 (finding of competency based on child-witness knowing his or her name, spelling of name, date of birth, grade in school, and difference between truth and a lie); *see also Johnson v. People,* 171 Colo. 505, 508, 468 P.2d 745, 747 (1970) (witness' mental condition did not render her testimony incompetent).

### C. Second Trial

¶ 52 We reject defendant's argument that the second trial court erred by relying on the first trial court's ruling and concluding that S.S. was competent.

¶ 53 The second court explained that it "had the opportunity to view two disks that are a part of the record which consist of [S.S.'s] interviews." The court also "had the benefit of the transcript of the proceeding that [the first trial court] conducted concerning the witness." It observed that the first court had conducted a "very thorough" inquiry of S.S.; only seven months had elapsed since S.S. testified in the first trial; and defendant did not present "sufficient evidence of any change in his mental state that require[d] the court to make further findings of competency."

¶ 54 The first and second findings are supported by the record. As to the third finding, defendant conceded:

> We don't know whether or not his competency may have changed since the last determination by the Court. We do know that he's being treated by a ... psychiatric doctor, who probably would be in the best position to determine whether he is competent at this time. We subpoenaed certain documents in and were only given two pages, which are insufficient to determine whether or not there's been a change in his competency.

¶ 55 Therefore, we discern no abuse of the second trial court's considerable discretion.

### IV. Photograph of Defendant's Chest

¶ 56 Defendant next contends the trial court erred by allowing the jury to view a photograph of his bare chest, taken during trial but outside the jury's presence. We discern no error.

¶ 57 Defendant does not dispute the relevancy of the photograph, which was admitted based on S.S.'s statements that defendant had a hairy chest. Instead, he asserts that taking the photograph violated Crim. P. 41.1 and his Fifth Amendment right against self-incrimination. We reject both assertions.

¶ 58 Crim. P. 41.1 "permits a court to issue an order requiring a person to be temporarily taken into custody for nontestimonial identification procedures." *People v. Carlson,* 677 P.2d 310, 317 n.7 (Colo.1984). But this rule does not apply to nontestimonial identifications of persons who, as here, are "already in police custody pursuant to a lawful arrest." *People v. Peoples,* 200 Colo. 509,

511, 616 P.2d 131, 133 (1980). As to such persons, Crim. P. 16(II)(a)(1) allows a trial court to "require the accused to give any nontestimonial identification as provided in Rule 41.1(h)(2)." Defendant does not assert that the court violated Crim. P. 16(II)(a)(1).

¶ 59 Further, the "Fifth Amendment protects a criminal defendant from disclosing knowledge by way of compelled testimony, but it does not prohibit authorities from recording physical characteristics of a person." *Peoples*, 200 Colo. at 510, 616 P.2d at 132. Thus, taking the photograph did not implicate defendant's privilege against self-incrimination. *Id.*; *see also Sandoval v. People*, 172 Colo. 383, 388, 473 P.2d 722, 724 (1970) (privilege against self-incrimination is "limited to testimonial compulsion as distinguished from a compulsion to exhibit physical characteristics").

¶ 60 Defendant's reliance on *Serratore v. People*, 178 Colo. 341, 346, 497 P.2d 1018, 1021 (1972), is misplaced. There, the prosecutor requested to measure the defendant's height in front of the jury, and "if the defendant had refused to perform the test, his assertion of his right to refuse to testify would have correspondingly prejudiced his case to the jury." *People v. Ramirez*, 199 Colo. 367, 375 n.9, 609 P.2d 616, 621 n. 9 (1980) (distinguishing and disapproving of *Serratore*), *disapproved of by People v. Archuleta*, 719 P.2d 1091 (Colo.1986).

¶ 61 Accordingly, we discern no error in connection with this photograph.

### V. Testimony of Defendant's Wife

¶ 62 We next reject defendant's contention that the trial court erred when it rejected his request to allow his wife to testify that he was uncircumcised.

¶ 63 Trial courts have considerable discretion concerning the admissibility of evidence, including its relevance, probative value, and prejudicial effect. *People v. Martinez*, 83 P.3d 1174, 1179 (Colo. App. 2003). Thus, we will not disturb such rulings unless they are manifestly arbitrary, unreasonable, or unfair. *Id.*

¶ 64 Here, during cross-examination of a detective, defendant inquired about potential flaws in the investigation, including why the detective only showed S.S. a photograph of defendant rather than utilizing a photo lineup. Next, defendant asked if "there might have been something significant for [S.S.] to identify other than the picture." The detective conceded that "because there could be a birthmark or anything odd, uncircumcised penis and circumcised penis, maybe that could come into play." Then the following exchange occurred:

Q: ... And you would expect [S.S.] at age 20 and born in this country probably is circumcised, would you not assume that?

[Prosecution]: Objection, speculation.

THE COURT: Sustained.

Q: You can make no such assumption of [defendant] born in Mexico, can you?

[Prosecution]: Same objection.

THE COURT: Sustained.

. . . .

Q: Assume the following facts and circumstances. Judge, I will connect this up through a witness. Assume ... [t]hat [defendant] is not and has never been circumcised?

[Prosecution]: Again ... irrelevant and an improper question.

COURT: I'm not sure where we are going with this ... you posed a hypothetical. It contains an assumption.

[Defense Counsel]: But not a full one ...

COURT: Get your full hypothetical. Let's see what we have here.

Q: Assume, if you will that [defendant], born in Mexico has never to this day been circumcised, and that called upon to describe and draw or to observe a lineup of circumcised penises, [S.S.] would pick one like his that is circumcised....

[Prosecution]: Objection ... continuing and also speculation.

COURT: ... [T]he hypothetical obviously contains facts that are not in evidence. The court is going to sustain the objection, finds that the hypothetical is improper.

¶ 65 At the close of the prosecution's case, defendant asked to call his wife to "ask her one question that is relevant to this case—is there anything unusual about your husband's

penis?" The court denied his request because the testimony would be irrelevant. It explained "there has been in this case no evidence that would suggest that anybody ever asked about circumcision" and "identification ... hasn't been raised in this way." Because the record supports this decision, we discern no abuse of discretion.

¶ 66 The detective's testimony only illustrated questions that *could* have been asked of S.S. during the investigation. However, because the detective did not ask S.S. about any identifying marks on defendant's body, and S.S. never mentioned any, whether defendant had been circumcised was not relevant. *See People v. Dooley*, 944 P.2d 590, 597 (Colo.App.1997) ("[F]acts bearing so remotely upon or which are so collateral to the issue that they afford only a conjectural inference should not be admitted in evidence.").

¶ 67 Defendant now argues that the trial court also erred by not allowing his wife to testify about whether he owned a "blue track suit," which a caretaker from the facility described defendant as having worn the morning after the alleged assault. Because defendant did not raise this issue when he asked the court to allow his wife to testify, we decline to review it. *See People v. Cushon*, 189 Colo. 230, 232, 539 P.2d 1246, 1247 (1975) (declining to address issue when no "offer of proof was ever made by defense counsel at the time of the trial judge's ruling").

## VI. Constitutionality of Rape Shield Statute

¶ 68 Defendant next contends, for the first time on appeal, that the rape shield statute is facially unconstitutional and unconstitutional as applied to him. Because this issue was unpreserved, we exercise our discretion and review it for plain error. We conclude that the error, if any, was not plain.

¶ 69 Although defendant concedes that he did not raise a facial or as-applied constitutional challenge to the rape shield statute in the trial court, we may exercise our discretion to address this unpreserved constitutional challenge and review for plain error. *See People v. Allman*, 2012 COA 212, ¶ 17, —— P.3d ——, ——,. Plain error review requires

that we determine whether (1) there was an error, (2) the error was "plain," or clear and obvious, and (3) the error was substantial, meaning that it so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction. *Id.*

¶ 70 Here, defendant's facial argument focuses on lack of "fundamental fairness," which he illustrates by juxtaposing sections 18–3–407 and 16–10–301, C.R.S. 2012; pointing to inconsistent judicial applications of these statutes to "similar" circumstances; and suggesting a lack of equal protection. This argument fails the obviousness requirement of plain error because:

- Similar arguments have been rejected. *See Villa*, 240 P.3d at 353.
- The standard for unconstitutionality is very high ("beyond a reasonable doubt") and facial unconstitutionality must be shown in all possible applications. *See Dallman v. Ritter*, 225 P.3d 610, 625 (Colo.2010).
- S.S. is not similarly situated to defendant, as the perpetrator, which is the threshold inquiry for an equal protection challenge. *See People v. Watkins*, 126 P.3d 309, 311 (Colo.App.2005).

¶ 71 In presenting his as-applied challenge, defendant does not articulate a constitutional argument separate from his evidentiary argument. Where possible, we resolve an issue on statutory grounds rather than constitutional grounds. *City of Florence v. Pepper*, 145 P.3d 654, 660 (Colo.2006). Because we have resolved this issue on statutory grounds, we need not address his as-applied challenge to the statute. *Id.*

## VII. Colorado Sex Offender Lifetime Supervision Act

¶ 72 Defendant next contends, also for the first time on appeal, that the Colorado Sex Offender Lifetime Supervision Act, sections 18–1.3–1001 to –1012, C.R.S. 2012, is facially unconstitutional.

¶ 73 Numerous divisions of this court have rejected defendant's argument. *See, e.g., People v. Firth*, 205 P.3d 445, 452 (Colo.App.

2008); *People v. Dash,* 104 P.3d 286, 293 (Colo.App.2004); *People v. Lehmkuhl,* 117 P.3d 98, 108 (Colo.App.2004). We perceive no reason to depart from those decisions.

## VIII. Social Services Records

¶ 74 We decline to address defendant's contentions regarding S.S.'s social services records. Defendant failed to ensure the social services records were part of the record on appeal. *See* C.A.R. 10 (governing the record on appeal). Consequently, we cannot conduct an independent review of the records, because the appellate record does not include the necessary materials. *See People v. Jowell,* 199 P.3d 38, 45 (Colo.App.2008).

## IX. Conclusion

¶ 75 We conclude that the trial court abused its discretion in ruling that evidence regarding S.S.'s prior sexual conduct was irrelevant. However, we remand the case with directions to the trial court to determine whether the probative value of the evidence demonstrating S.S.'s sexual knowledge is substantially outweighed by the countervailing policy concerns of CRE 403.

¶ 76 On remand, the court should review the admissibility of the evidence under CRE 403, and may determine, in its discretion, whether a further hearing is appropriate for that purpose. If the court concludes that the probative value of some or all of the evidence demonstrating alternative sources of S.S.'s sexual knowledge is not substantially outweighed by the concerns set forth in CRE 403, the judgment and sentence shall be reversed and the court shall order a new trial. If, however, the court concludes that all of the evidence is inadmissible under CRE 403, the judgment and sentence shall stand affirmed, subject to defendant's right to appeal that ruling.

¶ 77 The case is remanded for further proceedings consistent with this opinion.

JUDGE WEBB and JUDGE CARPARELLI concur.